1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7            FOR THE DISTRICT OF ARIZONA

8

9  Camaro Sue Sim-Reisewitz,                 No. CV-15-08146-PCT-DJH (ESW)

10                     Petitioner,        **REPORT AND**
                                          **RECOMMENDATION**
11  v.

12  Charles L. Ryan, et al.,

13                     Respondents.

14

15

16  **TO THE HONORABLE DIANE J. HUMETEWA, UNITED STATES DISTRICT**

17  **JUDGE:**

18      Pending before the Court is Camaro Sue Sim-Reisewitz's ("Petitioner") Petition

19  under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) (the "Petition").

20  Respondents have answered (Doc. 9), and Petitioner has replied (Doc. 12).  The matter is

21  deemed ripe for consideration.

22      Respondents do not raise any affirmative defenses in their Answer (Doc. 9).  The

23  undersigned finds that all four grounds for relief are meritless.  It is therefore

24  recommended that the Court deny and dismiss the Petition with prejudice.

25                      **I.  BACKGROUND**

26  **A.  Facts Underlying Petitioner's Convictions**

27      Petitioner is currently serving an eight-year prison term for convictions on four

28  counts following a February 2010 jury trial in Mohave County Superior Court:  (i) two

1  counts of child abuse, class 4 felonies; (ii) possession of dangerous drugs for sale

2  (methamphetamine), class 2 felony; and (iii) possession of drug paraphernalia

3  (methamphetamine), class 6 felony.  (Doc. 9-5 at 4-6, 27, 55).  Petitioner was tried with

4  co-defendant Michael Reisewitz ("Reisewitz"), with whom she was living on the date of

5  her arrest.  Petitioner and Reisewitz were married on May 2, 2009 while they were

6  awaiting trial. (Doc. 9-1 at 4).

7  The following is a summary of the facts underlying Petitioner's convictions as

8  recounted by the Arizona Court of Appeals in its April 2011 decision.[1]  In the summer of

9  2008, drug task force officers in Kingman, Arizona received information that Petitioner

10  was selling and using methamphetamine in her residence.  (Doc. 9-5 at 66).  On March

11  20, 2009, Child Protective Services ("CPS") requested an officer's assistance in

12  removing Petitioner's two children from her residence.[2]  A CPS worker interviewed

13  Petitioner's children, who indicated that Petitioner was using drugs.[3]  (*Id.*).  The officer

14  assisting the CPS worker was given permission to search Petitioner's residence.[4]  (*Id.*).

15  Petitioner and Reisewitz were present while the officer conducted his search.  During the

16  search, the officer observed a safe in the master bedroom and requested the combination.

17  (*Id.*). Petitioner and Reisewitz each denied knowing the safe's combination and claimed

18  that the safe belonged to the other.  (*Id.*).  Reisewitz later told an officer that the safe and

19  all of its contents were his.  (Doc. 9-3 at 117, 217).

20  _____

21  [1] A state court's factual determinations are presumed correct. 28 U.S.C. §
22  2254(e)(1).

23  [2] CPS became involved after receiving a complaint alleging the abuse of one of
Petitioner's daughters who ran away.  (Doc. 9-2 at 215).

24  [3] The two children interviewed made the following statements to the CPS case
worker:  "The drugs mommy uses look like sugar crystals"; "Mommy keeps bad tobacco
25  in the safe"; Mommy sells drugs because I saw her meth and dope"; "Mike changes the
combination to the safe every week"; "Santana blows marijuana smoke in my face."  One
26  of the children indicated to the CPS case worker that "bad tobacco" is marijuana.  (Doc.
9-5 at 68 n.1).  Santana is the daughter who ran away.  (Doc. 9-2 at 213-15).
27

28  [4] The Arizona Court of Appeals noted that "[t]he transcript of the suppression
hearing did not indicate who gave the officer permission to search the home."  (Doc. 9-5
at 69 n.2).

1     While the children were being removed from the residence, Petitioner asked an

2   officer to retrieve her medication from a drawer in the bathroom.  (*Id*. at 66-67).  The

3   officer agreed and saw a syringe in the same drawer as the medication.  (*Id*. at 67).

4     A search warrant was obtained on March 20, 2009 based on all of the above

5   information.  (*Id*.).  Through the search, officers discovered a needle with a spoon, a

6   syringe with a spoon, tin foil and a piece of plastic, surveillance equipment, and a bag of

7   trash.  (*Id*.).  Officers also seized the safe, which was later opened.  (Doc. 9-3 at 203).

8   Items in the safe included a (i) zippered bag containing syringes, small plastic bags, a

9   digital scale, two silver spoons, and eight sandwich sized plastic bags and (ii) a black

10  wallet containing Petitioner's identification, money, and individually packaged bags of

11  methamphetamine.  (*Id*. at 205-08).

12                **B.  Motion to Suppress, Direct Appeal, and Post-Conviction Relief**

13    On August 7, 2009, the trial court held a hearing on a motion to suppress filed by

14  Petitioner's trial counsel.  (Doc. 9-1 at 6-73).  Petitioner's trial counsel argued that the

15  March 20, 2009 search warrant lacked probable cause and that all evidence collected

16  during the search should be suppressed.  The trial court denied the motion.  (*Id*. at 58-69).

17    On direct appeal, Petitioner argued that the trial court abused its discretion in

18  denying the motion to suppress.  (Doc. 1-1 at 2-39).  In its April 21, 2011 decision, the

19  Arizona Court of Appeals found that probable cause existed for the issuance of the search

20  warrant and affirmed Petitioner's convictions and sentences.  (Doc. 9-5 at 66-69).  On

21  September 20, 2011, the Arizona Supreme Court denied Petitioner's request for further

22  review.  (Doc. 1-1 at 70).  In Ground One of the Petition, Petitioner continues to assert

23  that the search warrant lacked probable cause and that the good faith exception does not

24  apply.  (Doc. 1 at 6).

25    On October 6, 2011, Petitioner filed a Petition for Post-Conviction Relief

26  ("PCR").  (Doc. 9-5 at 71-76).  On January 12, 2012, Petitioner's PCR counsel filed a

27  brief that raised the same grounds that Petitioner has raised in Grounds Two, Three, and

28  Four of the Petition: (i) trial counsel was ineffective for failing to file a motion to

1    suppress based upon an allegedly illegal arrest/detention of Petitioner and involuntary

2    consent search (Grounds Two and Four); and (ii) trial counsel was ineffective for failing

3    to file a motion to sever Petitioner's trial from Reisewitz's trial (Ground Three).  (Doc. 1-

4    3 at 34-53).

5         On May 8, 2012, the trial court set an evidentiary hearing on Petitioner's claim

6    pertaining to trial counsel's failure to seek a trial severance.  (Doc. 1-3 at 20).  The

7    hearing was held on October 26, 2012 and continued to April 5, 2013.  (Doc. 9-5 at 82-

8    168; Doc. 16-1 at 2-60).   On April 18, 2013, the trial court denied the PCR Petition.[5]

9    (Doc. 1-3 at 23-26).   On January 6, 2015, the Arizona Court of Appeals granted

10   Petitioner's request for review, but denied relief.  (Doc. 9-5 at 170-72).  The Arizona

11   Supreme Court denied review on July 1, 2015.  (Doc. 1-4 at 31).  On August 20, 2015,

12   Petitioner initiated this habeas proceeding.  (Doc. 1).

13                              **II.  LEGAL STANDARDS**

14        **A.  Reviewing Habeas Claims on the Merits**

15        In reviewing the merits of a habeas petitioner's claims, the Anti-Terrorism and

16   Effective Death Penalty Act ("AEDPA") requires federal courts to defer to the last

17   reasoned state court decision.  *Woods v. Sinclair*, 764 F.3d 1109, 1120 (9th Cir. 2014);

18   *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013).  To be entitled to relief, a state

19   prisoner must show that the state court's adjudication of his or her claims either:

20           1. [R]esulted in a decision that was contrary to, or
                involved an unreasonable application of, clearly

21              established Federal law, as determined by the Supreme
                Court of the United States; or

22

23

24        [5] In denying the PCR Petition, the trial court explicitly discussed Petitioner's claim
     that trial counsel was ineffective for failing to file a motion to suppress based on her
     alleged illegal detention.  (Doc. 1-3 at 19-20).  The trial court did not explicitly address

25   Petitioner's claim that trial counsel was ineffective for failing to file a motion to suppress
     based on the alleged involuntary consent search.  The undersigned presumes the claim

26   was adjudicated on the merits and does not find any evidence in the record that would
     rebut that presumption. *See Richter*, 562 U.S. at 99 (when a state court summarily denies

27   without discussion all the claims raised by a defendant, the federal habeas court must
     presume that the federal claim was adjudicated on the merits); *Johnson v. Williams*, 133

28   S.Ct. 1088, 1096 (2013) (*Richter* presumption applies when a state court's decision
     denying relief discusses some claims, but is silent as to other claims).

1
2

      2. [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

28 U.S.C. § 2254(d)(1), (2); *see also, e.g., Woods*, 764 F.3d at 1120; *Parker v. Matthews*,

4

132 S. Ct. 2148, 2151 (2010); *Richter*, 562 U.S. at 99.

5

      As to the first entitlement to habeas relief as set forth in 28 U.S.C. § 2254(d)(1)

6

above, "clearly established federal law" refers to the holdings of the U.S. Supreme

7

Court's decisions applicable at the time of the relevant state court decision. *Carey v.*

8

*Musladin*, 549 U.S. 70, 74 (2006); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). A state

9

court decision is "contrary to" such clearly established federal law if the state court (i)

10

"applies a rule that contradicts the governing law set forth in [U.S. Supreme Court]

11

cases" or (ii) "confronts a set of facts that are materially indistinguishable from a decision

12

of the [U.S. Supreme Court] and nevertheless arrives at a result different from [U.S.

13

Supreme Court] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting

14

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

15

      As to the second entitlement to habeas relief as set forth in 28 U.S.C. § 2254(d)(2)

16

above, factual determinations by state courts are presumed correct unless the petitioner

17

can show by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see*

18

*also Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011); *Davis v. Woodford*, 384 F.3d

19

628, 638 (9th Cir. 2004). That is, a state court's determination that a claim lacks merit

20

precludes federal habeas relief so long as "fair-minded jurists could disagree" on the

21

correctness of the state court's decision. *Richter*, 562 U.S. at 101; *Yarborough v.*

22

*Alvarado*, 541 U.S. 652, 664 (2004).

23
24

**B. Proving Ineffective Assistance of Counsel Under *Strickland v. Washington*, 466 U.S. 668 (1984)**

25

      The "clearly established federal law" for an ineffective assistance of counsel

26

("IAC") claim is the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668

27

(1984). Under *Strickland*, a petitioner arguing an IAC claim must establish that his or her

28

counsel's performance was (i) objectively deficient and (ii) prejudiced the petitioner.

1    *Strickland*, 466 U.S. at 687.   This is a deferential standard, and "[s]urmounting

2    *Strickland's* high bar is never an easy task."   *Clark v. Arnold*, 769 F.3d 711, 725 (9th Cir.

3    2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

4        In assessing the performance factor of *Strickland's* two-part test, judicial review

5    "must be highly deferential" and the court must try not "to second-guess counsel's

6    assistance after conviction."   *Clark*, 769 F.3d at 725 (internal quotation marks and

7    citation omitted).   To be constitutionally deficient, counsel's representation must fall

8    below an objective standard of reasonableness such that it was outside the range of

9    competence demanded of attorneys in criminal cases.   *Id.*   A reviewing court considers

10   "whether there is any reasonable argument" that counsel was effective.   *Rogovich v.*

11   *Ryan*, 694 F.3d 1094, 1105 (9th Cir. 2012).

12       To establish the prejudice factor of *Strickland's* two-part test, a petitioner must

13   demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the

14   result of the proceeding would have been different.   A reasonable probability is a

15   probability sufficient to undermine confidence in the outcome."   *Strickland*, 466 U.S. at

16   694.   In other words, it must be shown that the "likelihood of a different result [is]

17   substantial, not just conceivable."   *Richter*, 562 U.S. at 112.

18       Although the performance factor is listed first in *Strickland's* two-part test, a court

19   may consider the prejudice factor first.   In addition, a court need not consider both factors

20   if the court determines that a petitioner has failed to meet one factor.   *Strickland*, 466

21   U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of

22   sufficient prejudice, which we expect will often be so, that course should be followed.");

23   *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998) (a court need not look at both

24   deficiency and prejudice if the habeas petitioner cannot establish one or the other).

25       Finally, on federal habeas review, the "pivotal question is whether the state court's

26   application of the *Strickland* standard was unreasonable."   *Richter*, 131 S.Ct.at 785.   And

27   "it is the habeas applicant's burden to show that the state court applied *Strickland* to the

28   facts of his case in an objectively unreasonable manner."   *Woodford v. Visciotti*, 537 U.S.

1    19, 25 (2002) (per curium).  "Relief is warranted only if no reasonable jurist could

2    disagree that the state court erred."  *Murray v. Schriro*, 746 F.3d 418, 465-66 (9th Cir.

3    2014) (internal quotation marks and citation omitted).

### III.  DISCUSSION

5        Respondents do not argue that the Petition is untimely or that Petitioner's grounds

6    for habeas relief are procedurally barred or defaulted.  However, as discussed below,

7    none of Petitioner's claims have merit.

**A.  Ground One: Challenge to the March 20, 2009 Search Warrant**

9        In Ground One, Petitioner argues that the March 20, 2009 search warrant was

10    invalid.  (Doc. 1 at 6).

11        The Fourth Amendment prohibits unreasonable searches and seizures.  Under a

12    judicially created doctrine known as the "exclusionary rule," evidence obtained by police

13    officers in violation of the Fourth Amendment is excluded at trial.  *Stone v. Powell*, 428

14    U.S. 465, 482 (1976).  The exclusionary rule does not apply "when an officer acting with

15    objective good faith has obtained a search warrant from a judge or magistrate and acted

16    within its scope."  *United States v. Leon*, 468 U.S. 897, 920 (1984).  That is because the

17    "exclusionary rule was adopted to deter unlawful searches by police, not to punish the

18    errors of magistrates and judges."  *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984).

19        In *Stone*, 428 U.S. at 494, the Supreme Court held that "where the State has

20    provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state

21    prisoner may not be granted federal habeas relief on the ground that evidence obtained in

22    an unconstitutional search or seizure was introduced at his trial."  The Court did not find

23    that the exclusionary rule's deterrent effect would be materially diminished if Fourth

24    Amendment claims could not be raised in a federal habeas proceeding.  *Id*. The Court

25    further found that even if there was an additional incremental deterrent effect, it would be

26    outweighed by "costs to other values vital to a rational system of criminal justice."  *Id*.

27    Thus, in reviewing a federal habeas petitioner's Fourth Amendment claim, "[t]he relevant

28    inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did

1    in fact do so or even whether the claim was correctly decided." *Ortiz–Sandoval v.*

2    *Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

3         Here, Petitioner filed a pretrial motion to suppress the evidence collected during

4    the March 2009 search, and the trial court held a hearing on the motion.  (Doc. 9-1 at 6-

5    73).  Petitioner's trial counsel argued that the search warrant was invalid because the

6    supporting affidavit did not establish probable cause and that the good faith exception to

7    the exclusionary rule did not apply.  (*Id*. at 41).  The trial court rejected counsel's

8    arguments and held that even if there was not probable cause, the officers acted in good

9    faith in serving and executing the search warrant.  (Doc. 9-1 at 58-69).

10        In her direct appeal, Petitioner argued that the trial court abused its discretion in

11   denying the motion to suppress.  (Doc. 1-1 at 17-37).  Petitioner sought further review by

12   the Arizona Court of Appeals.  In a well-reasoned decision, the Arizona Court of Appeals

13   found that the search warrant was supported by probable cause and that the trial court did

14   not abuse its discretion in refusing to suppress the collected evidence.  (Doc. 9-5 at 66-

15   69).

16        Petitioner does not argue that she was denied a full and fair opportunity to litigate

17   her claim that the search warrant was invalid under the Fourth Amendment.  Indeed, as

18   shown above, Petitioner received a full and fair opportunity to litigate her claim.  *See*

19   *Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986) ("All *Stone v. Powell* requires is the

20   initial opportunity for a fair hearing. . . . Such an opportunity for a fair hearing forecloses

21   this court's inquiry, upon habeas corpus petition, into the trial court's subsequent course

22   of action, . . . including whether or not the trial court has made express findings of fact.")

23   (citations omitted).  Because a "Fourth Amendment claim is not cognizable in federal

24   habeas proceedings if a petitioner has had a full and fair opportunity to litigate the claim

25   in state court," it is recommended that the Court dismiss Ground One.  *Ortiz–Sandoval*,

26   81 F.3d at 899.

27

28

**B. Grounds Two and Four:  Alleged IAC for Trial Counsel's Failure to File a Motion to Suppress Based on (i) Petitioner's Initial, Allegedly Involuntary Consent to the Search of Her Home on March 20, 2009 and (ii) the Allegedly Illegal Arrest/Detention of Petitioner on March 20, 2009**

In Ground Two, Petitioner argues that her trial counsel was ineffective for failing to file a motion to suppress on the basis that she involuntarily consented to officers searching her home on March 20, 2009.  (Doc. 1 at 7).  Petitioner asserts that she initially denied an officer's request to search her home, and "at that point he got very angry, but he did offer me a lesser penalty or if I still refused he would come back w/ guns drawn, kick my doors in, in front of my kids.  This scared me  . . . . So at that point I reluctantly said yes."  (*Id*.).

In Ground Four, Petitioner states that "[a]fter the 'involuntary' concent [sic] search where there was nothing found but a 6" horse syringe, I was placed in handcuffs & taken outside & sat in a chair" while an officer left to obtain a search warrant.  (*Id*. at 9).  Petitioner argues that this constituted an illegal arrest/detention.  Ground Four references Petitioner's brief filed in the Arizona Court of Appeals, in which she argued that her trial counsel was ineffective for failing to challenge Petitioner's allegedly illegal arrest/detention by filing a motion to suppress under the "fruit of the poisonous tree" doctrine.[6]  (*Id*.; Doc. 1-2 at 32-36).

Liberally construed, the Court finds that Grounds Two and Four present the claim that Petitioner's trial counsel was ineffective for failing to file a motion to suppress on the bases that the consent to search her home was involuntary and she was illegally arrested/detained.  As discussed below, this claim is without merit.

First, "[m]ere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation."  *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980).  The Arizona Court of Appeals reasonably concluded that trial counsel's

---

[6] The doctrine excludes both the "primary evidence obtained as a direct result of an illegal search or seizure" as well as "evidence later discovered and found to be derivative of an illegality."  *Segura v. United States*, 468 U.S. 796, 804 (1984); *see also United States v. Ramirez–Sandoval*, 872 F.2d 1392, 1395 (9th Cir. 1989).

1
2
3

decision to "seek suppression on one ground instead of others was anything other than a tactical decision" that fell within prevailing professional norms.   (Doc. 9-5 at 171). Petitioner has failed to satisfy the performance prong of the *Strickland* test.

4
5
6
7
8
9
10

        Second, "[w]hen the Sixth Amendment ineffective assistance of counsel claim is rooted in defense counsel's failure to litigate a Fourth Amendment issue, as it is here, petitioner must show that (1) the overlooked motion to suppress would have been meritorious and (2) there is a reasonable probability that the jury would have reached a different verdict absent the introduction of the unlawful evidence."  *Ortiz–Sandoval v. Clarke*, 323 F.3d 1165, 1170 (9th Cir. 2003) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)); *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999).

11
12
13
14
15

        Here, the Arizona Court of Appeals found that the statements by Petitioner's children that "clearly [described] drug activity" and "drug use by [Petitioner]" **alone** supported a probable cause finding.  (Doc. 9-5 at 67-68).  Thus, the March 20, 2009 search warrant would have been supported by probable cause even if the evidence from the consent search and arrest/detention was suppressed.[7]

16
17
18
19
20
21
22
23
24
25
26

        Further, the trial court determined that even if there was not probable cause for the issuance of the search warrant, the officers acted in good faith in serving and executing it. (Doc. 9-1 at 69).   Thus, the exclusionary rule would not have applied even if "suppression of the fruits" of the consent search and arrest/detention abrograted the probable cause finding.  Accordingly, the Arizona Court of Appeals did not unreasonably conclude that Petitioner has failed to show prejudice in advancing the IAC claims presented in Grounds Two and Four.  (Doc. 9-5 at 171); s*ee Bailey v. Newland*, 263 F.3d 1022, 1029 (9th Cir. 2001) ("in order to show prejudice when a suppression issue provides the basis for an ineffectiveness claim, the petitioner must show that he would have prevailed on the suppression motion, and that there is a reasonable probability that the successful motion would have affected the outcome"); *see also Kimmelman v.*

27
28

        [7] To the extent that Grounds Two and Four challenge the State courts' rulings regarding the March 20, 2009 search warrant, the challenge is precluded from habeas review for the reasons set forth in the preceding section.

1   *Morrison*, 477 U.S. 365, 375 (1986) (an omitted action must be shown to be meritorious

2   to support an ineffective assistance of counsel claim); *James v. Borg*, 24 F.3d 20, 27 (9th

3   Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective

4   assistance of counsel."); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (failure to

5   take futile action can never be deficient performance); *Boag v. Raines*, 769 F.2d 1341,

6   1344 (9th Cir. 1985) (the "[f]ailure to raise a meritless argument does not constitute

7   ineffective assistance"); *Hernandez v. Harrington*, 720 F.Supp.2d 1161, 1171–72 (C.D.

8   Cal. 2010) (trial counsel held not to be ineffective for failing to make a motion to sever

9   when it was "highly unlikely" that the motion would have been granted).

10   For the above reasons, the undersigned does not find that the State courts' denial

11   of Petitioner's claims presented in Grounds Two and Four was contrary to, or involved an

12   unreasonable application of, *Strickland* or based on an unreasonable determination of the

13   facts.  It is therefore recommended that the Court dismiss Grounds Two and Four.

14   **C. Ground Three:  Alleged IAC for Trial Counsel's Failure to File a Motion to Sever Petitioner's Trial from Reisewitz's Trial**

15

16   As mentioned, Petitioner married co-defendant Reisewitz on May 2, 2009 while

17   on pretrial release.  (Doc. 9-1 at 4).  In her third ground for habeas relief, Petitioner

18   asserts that her trial counsel was ineffective for failing to file a motion to sever

Petitioner's trial from Reisewitz's trial. (Doc. 1 at 8).  Petitioner states that:

19      [Reisewitz] was suppose [sic] to testify in [sic] my behalf at

20      our trial.  But 9 days befor [sic] our trial he beat me severly [sic] & left me in a ditch on the side of the road.  I contacted

21      my attorney the following morning . . . . I did ask him at that

22      time if we could sever the cases.   He said no because we had to do it 20 days befor [sic] trial. . . . [Reisewitz'] attorney

23      slammed me at trial.  My attorney did nothing.  Not even on

24      the domestic violence issue.   [Reisewitz] did not testify. Instead he left the courtroom.  As I told my attorney this was

25      going to happen when [Reisewitz] beat me up.

26   (*Id.*).

27   **1.  Performance Prong of the *Strickland* Test**

28   Petitioner's trial counsel testified at the October 26, 2012 evidentiary hearing.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(Doc. 16-1 at 12-53).  In its decision denying the PCR Petition, the trial court correctly noted that:[8]

> This is not a case where it is being asserted that trial counsel was ineffective because he failed to recognize a potential issue that he could and should have raised.  It was obvious from the testimony that trial counsel recognized the severance issue, discussed it with his client on numerous occasions, discussed it with counsel for [Reisewitz], and made a conscious decision to not seek a severance.

(Doc. 1-3 at 24).  The trial court also correctly stated that "[w]hether the decision not to sever fell below acceptable standards of professionalism must be judged based on the circumstances at the time, not based on the ability to look back with hindsight at what actually happened at trial."  (*Id*. at 24); *see also Strickland*, 466 U.S. at 689 (a reviewing court must resist the temptation "to conclude that a particular act or omission was unreasonable" simply because it "proved unsuccessful" at trial).  Based on trial counsel's testimony and the totality of the circumstances, the trial court found that trial counsel's tactical choice not to move for a severance fell within the standards of prevailing professional norms.  (*Id*. at 26).  The Arizona Court of Appeals found that the trial court's ruling was supported by evidence presented at the hearing, "including extensive testimony by trial counsel about why he had decided not to seek severance."  (Doc. 9-5 at 172).  The Court of Appeals held that the trial court did not abuse its discretion in rejecting Petitioner's IAC claim.  (*Id*. at 171-72).

Petitioner has not offered any reason why the trial court's ruling, as adopted by the Arizona Court of Appeals, is not an objectively reasonable application of *Strickland*.  A federal habeas petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . ."  *Bell v. Cone*,

---

[8] The Arizona Court of Appeals affirmed the trial court's decision and substantially adopted its reasoning.  (Doc. 9-5 at 171-72).  The Court may therefore review the trial court's decision as part of its review of the Arizona Court of Appeals' decision.  *See, e.g.*, *Lewis v. Lewis*, 321 F.3d 824, 829 (9th Cir. 2003) ("Because [the state appellate court's] decision affirmed the trial court and adopted one of the reasons cited by the trial court,    . . . our analysis will necessarily include discussion of the trial court's decision as well.").

1    535 U.S. 685, 698-699 (2002).  Petitioner has the burden of showing that the State courts

2    unreasonably applied *Strickland* to the facts of her case.  *Visciotti*, 537 U.S. at 25.  While

3    it is clear that Petitioner believes the State court's denial of her claim is incorrect,

4    "an *unreasonable* application of federal law is different from an *incorrect* application of

5    federal law."  *Williams*, 529 U.S. at 410 (emphasis in original).  A district court "may not

6    issue the writ simply because that court concludes in its independent judgment that the

7    relevant state-court decision applied clearly established federal law erroneously or

8    incorrectly."  *Id.* at 411.

9         The trial court's decision makes the implicit finding that the court found trial

10   counsel's testimony credible.[9]  The Court cannot redetermine that finding.  *See Marshall*

11   *v. Lonberger*, 459 U.S. 422, 434 (1983) ("Federal habeas courts [have] no license to

12   redetermine credibility of witnesses whose demeanor has been observed by the state trial

13   court. . . .") (citing 28 U.S.C. § 2254(d)).  The undersigned has reviewed the transcript of

14   the October 26, 2012 hearing, and recounts the following relevant excerpts:

15        1. Petitioner's trial counsel testified that it was Reisewitz's "intention at every

16   moment in preparation for the trial [] to take the stand and fall on his sword, if you will,

17   and claim the entire ownership" of the safe and drugs.  (Doc. 16-1 at 19).

18        2.  Petitioner's PCR counsel asked trial counsel whether he was concerned that

19   Reisewitz would not claim ownership of the safe and drugs after the alleged domestic

20   violence incident.   (*Id.* at 21).  Trial counsel explained that he "never counted on the fact

21   that [Reisewitz]  . . . would do that for [Petitioner]," but Petitioner "certainly believed

22   that he would, even believed that he would after that domestic violence incident.  The

23   more important aspect was that his admission was still going to come in, whether or not

24   he took the witness stand."  (*Id*. at 21-22).

25        3.  Trial counsel further testified that Petitioner "had zero chance of winning if she

26   went to trial by herself, without his admission; because the only issue would be whether

27

28        [9] The trial court's rejection of Petitioner's IAC claim relied in part on a recitation of trial counsel's testimony.  (Doc. 1-3 at 24).  The trial court gave no indication that it found trial counsel's testimony less than fully credible.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

or not she had access to the safe in her bedroom, in her house, and her wallet with the drugs in it." (*Id.* at 23). Trial counsel's chosen defense strategy was to argue that Reisewitz was controlling of Petitioner and that Reisewitz took Petitioner's wallet and placed it in the safe without her consent as a means furthering that control. (*See, e.g.*, Doc. 9-2 at 222). Trial counsel emphasized to the jury that Reisewitz admitted that the safe and its contents were his and that he buys, uses, and sells methamphetamine. (*Id.* at 223; Doc. 9-4 at 179, 181-82; *see also* Doc. 9-3 at 240-41). Based on the record, the undersigned finds that trial counsel's decision not to file a motion to sever was based on a "carefully considered, deliberately undertaken strategy, the likes of which [a court] cannot second-guess on federal habeas review." *Ayala v. Chappell*, --- F.3d ----, 2016 WL 3913446, at *10 (9th Cir. July 20, 2016). As discussed below, the weight of the evidence against Petitioner was great. "Absent any defense that could have promised a greater chance of success, [the Court] cannot conclude that [trial counsel] was deficient for choosing the one he did." *Gallegos v. Ryan*, 820 F.3d 1013, 1029 (9th Cir. 2016); *see also Bemore v. Chapell*, 788 F.3d 1151, 1163 (9th Cir. 2015) ("a tactical decision may constitute constitutionally adequate representation even if, in hindsight, a different defense might have fared better").

18
19

Petitioner has failed to show that the State courts unreasonably concluded that her trial counsel made a tactical choice that fell within objective standards of competence.

20

**2.  Prejudice Prong of the *Strickland* Test**

21
22
23
24
25
26
27
28

As the trial court noted, there were several "critical factors" that remained regardless of whether Petitioner and Reisewitz's trial was severed or not. (Doc. 1-3 at 26). For instance, one of the items found in the safe was a wallet containing Petitioner's identification and bags of methamphetamine. (Doc. 9-3 at 208). Petitioner admitted to an officer that she purchased approximately 3.5 grams (an "eightball") of methamphetamine "a day or two" before the March 20, 2009 search. (*Id.* at 215). Petitioner also admitted to the CPS worker that she has a twenty-year history of methamphetamine use and had been selling methamphetamine. (*Id.* at 98). In addition,

1    an officer testified that surveillance equipment was installed at Petitioner's home and

2    stated that it is "extremely common" for people who sell drugs to have such surveillance.

3    (*Id.* at 201-02).  Petitioner's son testified that "sometimes" Petitioner would make drugs

4    with another individual at the house.  (*Id*. at 65).  The CPS worker testified that one of

5    Petitioner's daughters stated that Petitioner "used meth and dope" and that she saw

6    Petitioner "eat it, put it in her nose, and . . . would put a needle into her arm."  (*Id*. at 94).

7    That daughter also testified at trial that she saw "scary people" coming in and out of

8    Petitioner's room, stating that about two or three of them would go into the room at a

9    time for about ten or fifteen minutes and that some of them had guns.  (*Id*. at 16-17).

10         While the closing argument given by Reisewitz's attorney highlighted the

11    evidence showing Petitioner's guilt and attempted to convince the jury that Reisewitz lied

12    about owning the safe and its contents in an effort to protect Petitioner (Doc. 9-4 at 136-

13    56), the trial court observed that:

14         [T]his case was tried by a very experienced trial prosecutor.
           The Court seriously doubts that arguments regarding
15         [Petitioner's] culpability made by [Reisewitz's] attorney were
           so arcane or sophisticated that they never would have
16         occurred to the prosecutor.  The Court is certain that the
           circumstances suggesting [Petitioner's] guilt were going to be
17         pointed out to the jury by the prosecutor whether someone
           else did so or not.
18

19    (Doc. 1-3 at 25-26).  Further, the trial court instructed the jury that opening statements

20    and closing arguments are not evidence.  (Doc. 9-4 at 70).  Petitioner's trial counsel

21    reminded the jury of that instruction during his closing argument.  (*Id*. at 159).  Courts

22    presume that a jury follows a trial court's instructions.  *See Francis v. Franklin*, 471 U.S.

23    307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their

24    task, attend closely the particular language of the trial court's instructions in a criminal

25    case and strive to understand, make sense of, and follow the instructions given them.").

26    In addition, the State asserted in its rebuttal argument that there is no evidence to support

27    the contention that Reisewitz took the blame to protect Petitioner.  (Doc. 9-4 at 191).  The

28    State argued that Petitioner and Reisewitz "are selling drugs together.  They are doing

1   exactly the same thing, out of the same room . . . . They are drug dealers.  It's what they

2   do.  It's both their drugs." (*Id*. at 190).  The State's rebuttal argument counterbalances

3   the statements made in the closing argument of Reisewitz's attorney.

4         Finally, the trial court observed that Reisewitz's "erratic conduct while present and

5   his unexplained absences that could be seen by the jury reflected poorly on himself and

6   could have further [Petitioner's] claim that she was not the one to have engaged in

7   criminal conduct." (Doc. 1-3 at 25).  Indeed, the record reflects that Reisewitz failed to

8   return to the courtroom following recess just as his attorney was about to deliver his

9   closing argument.  (Doc. 9-4 at 135).

10         Given the strength of the state's case against Petitioner, Petitioner has not

11   established a "substantial, not just conceivable" likelihood of a different result if the trial

12   had been severed.  *See Richter*, 562 U.S. at 112.  The State courts' conclusion that

13   Petitioner has failed to satisfy the prejudice prong of the *Strickland* test is reasonable.

14         For the above reasons, the undersigned does not find that the State courts' denial

15   of her IAC claim presented in Ground Three was contrary to, or involved an

16   unreasonable application of, *Strickland* or based on an unreasonable determination of the

17   facts.  The undersigned therefore recommends that the Court deny Ground Three.

18                     **IV.  CONCLUSION**

19         Based on the foregoing, the undersigned recommends that the Court deny and

20   dismiss the Petition (Doc. 1) with prejudice.

21         Accordingly,

22         **IT IS RECOMMENDED** that the Petition (Doc. 1) be **DENIED** and

23   **DISMISSED WITH PREJUDICE**.

24         **IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave

25   to proceed in forma pauperis on appeal be denied because Petitioner has not made a

26   substantial showing of the denial of a constitutional right in his claims for relief.

27         This recommendation is not an order that is immediately appealable to the Ninth

28   Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1)

1   should not be filed until entry of the District Court's judgment.  The parties shall have

2   fourteen days from the date of service of a copy of this recommendation within which to

3   file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

4   6, 72.  Thereafter, the parties have fourteen days within which to file a response to the

5   objections. Failure to file timely objections to the Magistrate Judge's Report and

6   Recommendation may result in the acceptance of the Report and Recommendation by the

7   District Court without further review.  Failure to file timely objections to any factual

8   determinations of the Magistrate Judge may be considered a waiver of a party's right to

9   appellate review of the findings of fact in an order or judgment entered pursuant to the

10   Magistrate Judge's recommendation.  *See United States v. Reyna-Tapia*, 328 F.3d 1114,

11   1121 (9th Cir. 2003); *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

12        Dated this 3rd day of August, 2016.

13

14   _____

15   Eileen S. Willett
     United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28